**Edward SERZYSKO, Plaintiff-Appellant,**

v.

**The CHASE MANHATTAN BANK,
Defendant-Appellee.**

Nos. 723, 724, Dockets 72–1068, 72–1069.

United States Court of Appeals,
Second Circuit.

Argued May 8, 1972.

Decided May 22, 1972.

Edward Serzysko, pro se.

John N. Bush, New York City (Milbank, Tweed, Hadley & McCloy, New York City, of counsel), for defendant-appellee.

Before FRIENDLY, Chief Judge, and MOORE and ANDERSON, Circuit Judges.

PER CURIAM:

In 1965, appellant Serzysko brought an action against appellee Chase Manhattan Bank in the District Court for the Southern District of New York to recover damages allegedly resulting from violations of Federal Reserve Regulation U, which controls margin requirements for loans made for the pur-

pose of carrying or purchasing registered securities, in conjunction with certain loans made to him. In a meticulous opinion dismissing the complaint after trial without a jury, the district judge found that none of appellee's officers had been aware of the falsity of appellant's representations to them concerning the purposes for which he sought the loans or of appellant's misuse of the funds; that appellee was nonetheless guilty of violating Regulation U because it could have discovered the falsity of appellant's representations in the exercise of reasonable diligence; but that appellant could not recover damages from appellee because of his own misconduct in bringing about the violation. Serzysko v. The Chase Manhattan Bank, 290 F.Supp. 74 (S.D.N.Y.1968), aff'd per curiam, 409 F.2d 1360 (2 Cir.), cert. denied, 396 U.S. 904, 90 S.Ct. 218, 24 L. Ed.2d 180 (1969).

In March 1971, appellant filed a new complaint, *pro se*, in the District Court for the Southern District of New York alleging that statements of newly discovered witnesses would establish that Hardiman and Hughes, officers of appellee who had been involved in processing appellant's loans, had committed perjury in their testimony at the trial of the 1965 complaint. He therefore evidently sought to have the judgment in the previous action set aside for "fraud upon the court" and to have a new trial granted. Appellant's complaint also purported to state a claim for damages against appellee on the ground that his employers had allegedly tried to force him to discontinue his suit in violation of the Civil Rights Act of 1964 and his "right to go to Court." Shortly after filing this new complaint, appellant filed a *pro se* motion in the original action, pursuant to F.R.Civ.P. 60(b), to set aside that judgment on the same ground as alleged in his complaint. On July 20, 1971, Judge Cooper denied appellant's Rule 60(b) motion and granted appellee's motion to dismiss the new complaint for failure to state a claim upon which relief can be granted. Thereafter, appellant made eleven *pro se* motions—six with respect to the new complaint and five with respect to the Rule 60(b) motion. Essentially all of these motions were made pursuant to F.R. Civ.P. 59, with the apparent primary purpose being to have Judge Cooper's decision set aside and to obtain a "rehearing" and "new trial." All were ultimately denied. However, before all of these motions had been decided, appellant filed notices of appeal under the docket numbers of both his 1965 and 1971 complaints. The notices of appeal refer only to decisions of certain of the motions he filed after denial of his Rule 60(b) motion and dismissal of his new complaint. The denial of a Rule 59 motion is normally appealable only in conjunction with the judgment to which it relates, see 6A Moore, Federal Practice ¶ 59.15 [1] & [4] (2d ed. 1971); however, appellate courts may consider an appeal of only the denial of a Rule 59 motion as harmless error, and treat the appeal as being from the underlying judgment when such an appeal would be timely, see, e. g., Maryland Tuna Corp. v. MS Benares, 429 F.2d 307, 317–318 (2 Cir. 1970); 6A Moore, *supra*, ¶ 59.15 [1], at 3892–93. Indeed, appellant's brief on this appeal is addressed not only to the decisions denying his motions but also to Judge Cooper's decision of July 20, 1971. Because of the time of filing and order of decision of appellant's numerous motions, there is substantial uncertainty whether appellant's notice of appeal was timely with respect to the July 20, 1971 decision. However, rather than venture into this complex problem in the context of this *pro se* appeal where we are without the benefit of full adversary treatment by counsel for both parties, we will treat the appeals as timely with respect to the underlying judgment and proceed to the merits.

We consider first appellant's efforts to set aside the prior judgment. Motions pursuant to Rule 60(b) (2), with respect to newly discovered evidence, and Rule 60(b) (3), with respect to fraud on the part of an adverse party,

must be made within one year after the judgment was entered, a period that had long since expired when appellant moved. And it is settled that an appellant cannot circumvent the one year limitation by invoking the residual clause (6) of Rule 60(b). See, e. g., United States v. Erdoss, 440 F.2d 1221, 1223 (2 Cir.), cert. denied, Horvath v. United States, 404 U.S. 849, 92 S.Ct. 83, 30 L. Ed.2d 88 (1971).

■ In asserting that conduct rising to the level of fraud upon the court has occurred here, appellant apparently makes reference to the penultimate sentence of Rule 60(b) as to which no time limit is specified. However, fraud upon the court is limited to

that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.

7 Moore, supra, ¶ 60.33, at 515 (footnote omitted); see Kupferman v. Consolidated Research & Mfg. Corp., 459 F. 2d 1072, 1078 (2 Cir. 1972). In finding fraud upon the court where an attorney was involved in the perpetration of the fraud, the Supreme Court indicated, by way of contrast, that fraud upon the court does not exist where a judgment has simply been "obtained with the aid of a witness who, on the basis of after-discovered evidence, is believed possibly to have been guilty of perjury." Hazel-

Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238, 245, 64 S.Ct. 997, 1001, 88 L.Ed. 1250 (1944). These appeals—both from the denial of the Rule 60(b) motion and from that portion of the new complaint charging fraud upon the court —present nothing more.[1] At the trial of the 1965 complaint, Hardiman and Hughes testified that appellant misrepresented to them the purposes for which he sought the loans; appellant testified that he made no misrepresentations and that Hardiman and Hughes had him sign blank statement of purpose forms with respect to the loans. The credibility of the witnesses was directly in issue and the veracity of their differing accounts of the relevant facts was fully considered in the original action. See 290 F.Supp. at 83–84. Insofar as appellant merely alleges that he now has new evidence which contradicts the testimony of Hardiman and Hughes, this is insufficient for a finding of fraud upon the court.

■ Additionally, to the extent that appellant has attempted to institute an independent action to set aside the original judgment, his papers present no basis for finding of fraud *inter partes*. Such an independent action has traditionally been sustainable only in cases of extrinsic, as opposed to intrinsic, fraud, see United States v. Throckmorton, 98 U.S. 61, 68, 25 L.Ed. 93 (1878), and perjury by trial witnesses is recognized to be of the latter variety, see 7 Moore, *supra*, ¶ 60.37 [1], at 615.[2]

1. Neither appellant's new complaint nor his papers in support of his Rule 60(b) motion contain any suggestion that appellee's attorneys were in any way involved in the alleged perjury of the witnesses Hardiman and Hughes. On this appeal, appellant argues that certain affidavits submitted by appellee's attorneys in support of the motion to dismiss appellant's new complaint contain perjured statements. But that contention does not go to the integrity of the original judgment, and, in any case, a review of the relevant records reveals that the charges are baseless.

2. Even if the extrinsic-intrinsic distinction did not survive the Court's decision in Marshall v. Holmes, 141 U.S. 589, 12 S.Ct. 62, 35 L.Ed. 870 (1891), appellant's independent action must nonetheless fail. The test suggested by that case seems to be whether there was an opportunity to have the ground now relied upon to set aside the judgment fully litigated in the original action, *id.* at 596, 12 S.Ct. 62. Here the credibility and conflicting accounts of the witnesses were subject to full examination by the parties and were carefully considered by the court in the original action.

■■ Appellant's new complaint alleges that he was approached on a number of occasions during the course of his litigation against appellee by his employers, a brokerage house which did a substantial amount of business with appellee, in an effort to dissuade him from continuing his litigation against appellee. In light of this, appellant claims that appellee violated the Civil Rights Act of 1964 and infringed "upon [his] right to go to Court." Our investigation of the Civil Rights Act of 1964, and in particular Title VII, the Fair Employment Opportunity Title, of that Act, has failed to reveal any provision that might conceivably cover appellant's complaint, nor has he pointed us to any such provision.[3] Appellant's allegation of infringement of his right of access to the courts is suggestive of an action based upon 42 U.S.C. § 1985(2), which provides a cause of action against persons who "conspire to deter, by force, intimidation, or threat, any party . . . in any court of the United States from attending such court . . . ." However, appellant's complaint contains no allegation that his employers' alleged conduct was the product of any conspiracy with appellee. At best, the complaint, in seeking damages against appellee, charges a "conspiracy and connivance among [Chase Manhattan's] employees, agents, or officials"; but it is impossible for appellee, through its employees, officers, and agents, to have conspired simply with itself, see Ariate Compania Naviera, S. A. v. Commonwealth Tankership Owners, Ltd., 310 F. Supp. 416, 421 (S.D.N.Y.1970). In any event, the complaint in relevant respects contains nothing more than naked assertions and sets forth no facts upon which

a court could find that appellant's employers pressured him to discontinue the litigation against appellee. Compare Avins v. Mangum, 450 F.2d 932, 933 (2 Cir. 1971). Thus, even taking into account the liberality with which *pro se* civil rights complaints must be construed, this complaint is wholly insufficient to state a claim upon which relief can be granted.[4]

We have fully considered appellant's other arguments concerning Judge Cooper's decision of July 20, 1971, and his various subsequent motions, and find them to be without merit.

Affirmed.

---

3. On this appeal, appellant's papers for the first time place reliance on the fact that he is of Polish origin, though now a naturalized citizen of the United States. He, however, makes no suggestion that the alleged acts of his employers were motivated by an animus against persons of Polish extraction. Compare 42 U.S.C. § 2000e–2(a). To the contrary, from his brief on this appeal, his

argument appears to be that appellee used its "economical power of money lending" to coerce his employers to bring pressure to bear on him.

4. In so saying, we are not to be understood to indicate that the *type* of conspiracy here suggested would necessarily be cognizable under 42 U.S.C. § 1985 (2) as a matter of law.